UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

---

| | |
|---|---|
| Wayne Gassoway, Juan Avina, and Kenneth Johnson, | Court File No. _____ <br> (Jury Trial Demanded) |
| Plaintiffs, | |
| v. | |
| Benchmark Energy Transport Services, Inc., Benchmark Logistics, Inc., and Unified Logistics Holdings, LLC, | |
| Defendants. | |

---

## COMPLAINT

The above-named plaintiffs, for their Complaint against Defendants, state and allege as follows:

## THE PARTIES

1. Plaintiff Wayne Gassoway leased a commercial vehicle to Benchmark Energy Transport Services, Inc. from about July, 2012 to August, 2014.

2. Plaintiff Juan Avina leased a commercial vehicle to Benchmark Energy Transport Services, Inc. or Benchmark Logistics, Inc. (collectively "Benchmark") from about 2005 to 2014.

3. Plaintiff Kenneth Johnson leased a commercial vehicle to Benchmark from about 2010 to 2014.

4. Benchmark Energy Transport, Inc. is a Texas corporation with a place of business at 13831 NW Freeway, Suite 445, Houston, Texas 77040. Benchmark Energy Transport, Inc. also claims a corporate address of 4800 Hamden Lane, Suite 200, Bethesda, MD, 20814, which

1

is the same corporate headquarters of co-Defendant United Logistics Holdings, LLC. Benchmark Energy Transport, Inc. is motor carrier in interstate commerce registered with the Federal Motor Carrier Safety Administration.

5. Benchmark Logistics, Inc. is a Texas corporation that had its DOT motor carrier registration revoked in December of 2012. Its corporate address is 13831 NW Freeway, Suite 445, Houston, Texas, 77040.

6. Defendant Unified Logistics Holdings, LLC. is a foreign corporation doing business in the jurisdiction and may be served with process at its corporate address of 4800 Hamden Lane, Suite 200, Bethesda, MD, 20814.

7. In 2008 Unified Logistics Holdings, LLC ("Unified") acquired Benchmark. In its announcement about the acquisition of Benchmark, Unified CEO Geoff Davis commented as follows:

> "We are excited about our partnership with Benchmark Energy Transport and look forward to building Unified into the premier logistics provider of urgent and over-dimensional freight. Working with ACI Capital, we expect to develop Unified into a leading provider of engineered time-critical, over-dimensional, and differentiated transportation services. We will focus on transporting the most difficult freight with the most complex challenges." Mr. Davis additionally commented that "Benchmark and Silk Road represent two highly regarded industry leaders in their respective specialties. Unified looks forward to assisting the existing management teams in expanding each company's service reach."

**JURISDICTION AND VENUE**

8. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337. The causes of action alleged in this complaint arise under the laws of the United States regulating the activities of motor carriers transporting property in interstate commerce, including 49 U.S.C. §§ 13501, 14102 and 14704(a)(1) and (2), and 49 C.F.R. § 376.1 et seq.

2

9. Venue is based upon 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims raised herein occurred in this district. Benchmark is a resident of this district within the meaning of 28 U.S.C. §1391(c) because they are subject to personal jurisdiction at the time this action was commenced.

## FACTS COMMON TO ALL COUNTS

10. At all times material, each Plaintiff was an owner of a commercial vehicle within the meaning of 49 C.F.R. § 376.2(d) and a "lessor" within the meaning of 49 C.F.R. § 376.2(f).

11. Benchmark is a motor carrier as defined at 49 U.S.C. § 13102 (12). 49 C.F.R. § 376.12 mandates that leases between motor carriers such as Benchmark and commercial vehicle owners such as the Plaintiffs contain specific terms and that regulated motor carriers such as Benchmark adhere to those terms.

12. Benchmark is a wholly-owned subsidiary of Unified. Both Benchmark and Unified share common executive management and the actions of Benchmark are for the ultimate benefit of Unified.

13. The officers and directors of Unified exercise effective control over the operation of Benchmark and are and have been fully aware of the conduct complained of herein which results in significant profits for Unified.

14. Benchmark and Unified are jointly and severally responsible for the damages claimed herein.

15. Each Plaintiff entered into one or more leases with Benchmark that was similar in form and content to the lease attached to this Complaint as Exhibit A. The leases require application of Texas law to common law claims.

## **CLASS ALLEGATIONS**

16.     Plaintiffs bring this action on their own behalf and on behalf of all other individuals and entities similarly situated pursuant to Fed. R. Civ. P. 23. The class is defined as follows:

> All owner-operators of motor vehicle equipment who at any time in the four years prior to the filing of this lawsuit were parties to a lease agreement governed by 49 C.F.R. Part 326 with Benchmark Transport Services, Inc. and/or Benchmark Logistics, Inc. Excluded from the class are all owners, officers and directors of Benchmark Energy Transport Services, Inc., Benchmark Logistics, Inc., and Unified Logistics Holdings, LLC.

17.     Plaintiffs are a member of the class they seek to represent.

18.     This action satisfies the procedural requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

19.     The conduct of Benchmark has caused money damages to Plaintiffs and the proposed class.

20.     The class is so numerous that joinder of all members is impracticable.

21.     There are substantial questions of law and fact common in the class. These questions include, but are not limited to the following:

   a. Whether Benchmark entered into substantially similar leases with members of the class.

   b. Whether Benchmark's leases violated the Federal Regulations applicable to such leases.

   c. Whether Benchmark breached the lease contracts with members of the class under Texas law.

   d. Whether Benchmark converted money otherwise owing to

members of the class under Texas law.

22. The claims of Plaintiffs are typical of the class. The same conduct that gives rise to the claims of Plaintiffs are identical to those that give rise to the claims of other members of the class.

23. Plaintiffs will fairly and adequately represent the interests of the class. There are no disabling conflicts of interest between Plaintiffs and the class.

24. Plaintiffs have suffered the same injuries as other class members making their interests co-extensive with those of the class.

25. Common questions of law and fact predominate over individualized questions.

26. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

27. Benchmark has in its possession all records necessary to determine who would be members of the class and what amounts are owing to the class.

### COUNT ONE - STATUTORY CLAIM UNDER 49 U.S.C. § 14704(a)(1)

28. Pursuant to 49 U.S.C. § 14704(a)(2) a carrier providing transportation or service subject to jurisdiction under 49 U.S.C. § 13501 et seq. is liable for damages sustained by a person for violations of 49 U.S.C. § 13101 et seq. and of regulations promulgated pursuant to 49 U.S.C. § 14102.

29. Plaintiffs seek damages caused by Benchmark's violations of lease and interchange regulations, 49 C.F.R. §§ 376.11 and 376.12. Plaintiffs also seek injunctive relief directing Benchmark to comply with 49 C.F.R. §§ 376.11 and 376.12.

30. 49 C.F.R. Part 376 governed the lease arrangement between Plaintiffs and

Benchmark. (see Exhibit A) At all times material, 49 C.F.R. § 376.12 provided, in part, that the written lease required therein "shall be adhered to and performed by the authorized carrier."

31. At all times material, 49 C.F.R. § 376.12(d) provided in pertinent part as follows:

> (d) Compensation to be specified. The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier. An authorized representative of the lessor may accept these documents. The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount.

32. Plaintiffs' leases with Benchmark did not comply with 49 C.F.R 376.12(d) because they did not clearly state on the face of the lease, or in an addendum that was attached to the lease, the amount to be paid by Benchmark to each Plaintiff for the lease of the equipment and driver's services. (see Exhibit A) Instead, Schedule A to the leases provided that each Plaintiff would receive a percentage of the "adjusted gross line-haul revenue and accessorial charges" billed by Benchmark to its customers and/or other parties responsible for payment of freight charges, without defining the term "adjusted gross line-haul revenue" or delineating those items constituting "accessorial charges."

33. Benchmark violated 49 C.F.R. § 376.12(d) by paying each Plaintiffs compensation that assessed a portion of a secret and undisclosed surcharge against each Plaintiff. As each Plaintiff was entitled to compensation based upon a percentage of revenue billed by Benchmark for shipments transported by each Plaintiff, the assessment of the secret surcharge

resulted in Benchmark underreporting the amount of revenue it received by up to 12.5 percent, and an underpayment of compensation to each Plaintiff.

34. At all times material, 49 C.F.R. § 376.12 provided, in part, as follows:

> (f) Payment period. The lease shall specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents and other paperwork concerning a trip in the service of the authorized carrier. The paperwork required before the lessor can receive payment is limited to log books required by the Department of Transportation and those documents necessary for the authorized carrier to secure payment from the shipper. The authorized carrier may require the submission of additional documents by the lessor but not as a prerequisite to payment. Payment to the lessor shall not be made contingent upon submission of a bill of lading to which no exceptions have been taken.

35. Benchmark did not comply with this mandatory lease term because it failed to pay each Plaintiff all compensation to which they were entitled. (see Exhibit A) Instead, Benchmark deducted an undisclosed and secret surcharge from gross revenue it reported to each Plaintiff as having billed to its customers.

36. At all times material, 49 C.F.R. § 376.12 provided as follows:

> (g) Copies of freight bill or other form of freight documentation. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. When a computer-generated document is provided, the lease will permit lessor to view, during normal business hours, a copy of any actual document underlying the computer-generated document. Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. The authorized carrier may delete the names of shippers and consignees

shown on the freight bill or other form of documentation.

37. Benchmark did not comply with 49 C.F.R. § 376.12 (g) because it failed to provide, before or at the time of settlement, a copy of the rated freight bill or a computer-generated document containing the same information that would appear on a rated freight bill to each Plaintiff. Instead, Benchmark provided each Plaintiff with periodic settlement statements understating by up to 12.5 percent the amount Benchmark had billed to its customers for each shipment transported by each Plaintiff.

38. At all times material, 49 C.F.R. § 376.12 provided as follows:

> (h) Charge-back items. The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

39. Benchmark did not provide plaintiffs, as lessors, with copies of those documents that were necessary to determine the validity of charge-backs items, including charge-backs for insurance.

40. Benchmark violated 49 C.F.R. § 376.12(h) by charging Plaintiffs an undisclosed and secret surcharge of up to 12.5 percent from the stated gross revenue for each shipment, without Plaintiffs' knowledge and approval, and by failing to provide each Plaintiff with copies of documents necessary to determine the validity of this secret surcharge.

41. At all times material, 49 C.F.R. § 376.12 provided, in part, as follows:

> (j) Insurance. (1) The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail

> insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

42. The leases did not comply with 49 C.F.R. § 376.12(j)(1) because, although they provided that Benchmark had a legal obligation to maintain insurance coverage for the protection of the public pursuant to Federal Motor Carrier Safety Administration regulations, Benchmark's secret surcharge, which in whole or in part was intended for public liability insurance, resulted in each Plaintiff paying for insurance, at a price far above Benchmark's cost. (see Exhibit A)

43. At all times material, 49 C.F.R. § 376.12(j) provided as follows:

> (2) If the lessor purchases any insurance coverage for the operation of the leased equipment from or through the authorized carrier, the lease shall specify that the authorized carrier will provide the lessor with a copy of each policy upon the request of the lessor. Also, where the lessor purchases such insurance in this manner, the lease shall specify that the authorized carrier will provide the lessor with a certificate of insurance for each such policy. Each certificate of insurance shall include the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to the lessor for each type of coverage, and the deductible amount for each type of coverage for which the lessor may be liable.
> (3) The lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements. The lease shall further specify that the authorized carrier must provide the lessor with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to the lessor. The written explanation and itemization must be delivered to the lessor before any deductions are made.

44. Benchmark did not comply with 49 C.F.R. § 376.12(j)(2) and (j)(3).

45. At all times material, 49 C.F.R. § 376.12(i) provided as follows:

> (i) Products, equipment, or services from authorized carrier. The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or

rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

46. The leases did not comply with 49 C.F.R. § 376.12(i).

47. Under 49 U.S.C. § 14704(a)(1) each Plaintiff is entitled to recover damages from Benchmark caused by its failure to comply with 49 C.F.R. § 376.12. Plaintiffs are also entitled to injunctive relief requiring Benchmark to comply with 49 C.F.R. §376.12.

48. As a result of Benchmark's violations of 49 C.F.R. §§ 376.11 and 376.12, each plaintiff has incurred damages in an amount to be determined at trial, but estimated to be in excess of $10,000.00 per year for each Plaintiff.

## COUNT TWO - BREACH OF CONTRACT

49. For Count Two of their Complaint, Plaintiffs reallege those matters set forth in paragraphs one through 48 above and further state:

50. Benchmark breached its lease contracts with each Plaintiff that incorporated the provisions specified in 49 C.F.R. § 376.12 as a matter of law. (see Exhibit A)

51. As a result of the breach of the leases by Benchmark, each Plaintiff has incurred damages in an amount to be determined at trial, but estimated to be in excess of $10,000.00 per year for each Plaintiff.

## COUNT THREE - CONVERSION

52. For Count Three of their Complaint, Plaintiffs reallege those matters set forth in paragraphs one through 51 above and further state:

53. Benchmark has engaged in a pattern and practice of making deductions from each Plaintiffs' compensation by deducting an undisclosed and secret surcharge from the amounts it

actually billed to its customers, prior to reporting to each Plaintiff the amounts it claimed to have billed to its customers, and other items not properly disclosed or enumerated and in amounts not properly set forth or explained in the Lease Agreements. Monies for those items have been and are unlawfully withheld and/or deducted from Plaintiffs in violation of 49 C.F.R. § 376.12(h) and (j).

54. As a direct and proximate result of Benchmark's violations of part 376, owner-operators are deprived of sums rightfully belonging to them and have incurred substantial monetary damages. Benchmark's failures are actionable under 49 U.S.C. § 14704(a)(1) and (2).

55. Throughout the terms of the leases between each Plaintiff and Benchmark, Benchmark prepared or caused to be prepared periodic settlement statements that Benchmark provided to each Plaintiff setting forth each Plaintiff's compensation.

56. In preparing periodic settlement statements, Benchmark caused the settlement statements to understate the revenue billed by Benchmark that in turn understated the compensation to which each Plaintiff was entitled.

57. Benchmark understated each Plaintiff's compensation on periodic settlement statements in order to commit acts of conversion of funds due to each Plaintiff from Benchmark.

58. As the proximate result of the conversion by Benchmark, each Plaintiff has suffered damages in an amount to be determined at trial, but estimated to be in excess of $10,000.00 per year for each Plaintiff.

## JURY TRIAL DEMAND

59. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment from the Court as follows:

A. Certify a class comprised of:

All owner-operators of motor vehicle equipment who at any time in the four years prior to the filing of this lawsuit were parties to a lease agreement governed by 49 C.F.R. Part 326 with Benchmark Transport Services, Inc. and/or Benchmark Logistics, Inc. Excluded from the class are all owners, officers and directors of Benchmark Energy Transport Services, Inc., Benchmark Logistics, Inc., and Unified Logistics Holdings, LLC.

B. As to Count One awarding each Plaintiff judgment against Defendants for damages for violations of 49 C.F.R. § 376.12 pursuant to 49 U.S.C.§ 14704(a)(2), including interest thereon, and a temporary and permanent injunction directing Benchmark to comply with 49 C.F.R. § 376.12;

C. As to Count Two awarding Plaintiffs judgment against Defendants for damages caused by breach of the leases;

D. As to Count Three, awarding Plaintiffs judgment against Defendants for damages caused by conversion;

E. Awarding Plaintiffs' attorney fees and costs pursuant to 49 U.S.C. § 14704(e); and.

F. Granting an injunction precluding Defendants from violating 49 C.F.R. §§ 376.11 and 376.12.

G. For such other relief as the Court deems just and equitable.

**PROVOST★UMPHREY LAW FIRM, LLP**

By _____
Matthew C. Matheny TBN#24039040
mmatheny@pulf.com
Michael A. Havard TBN#09238080
mhavard@pulf.com
490 Park Street
Beaumont, TX  77701
Tel. No. (409) 835-6000
FAX:    (409) 838-8803

**TAYLOR & ASSOCIATES, LTD.**
Paul O. Taylor (No. 161962)
900 West 128th Street, Suite 204
Burnsville, MN 55337
Tel. No. (651) 454-5800
ATTORNEYS FOR PLAINTIFFS

**CHESTNUT CAMBRONNE, P.A.**
Karl L. Cambronne (Mn. Bar No. 14321)
Jeffrey D. Bores (Mn. Bar No. 227699)
Sarah B. Bennett (Mn. Bar No. 0389076)
17 Washington Avenue North, Suite 300
Minneapolis, MN 55401
Tel. No. (612) 336-2922

ATTORNEYS FOR PLAINTIFFS